74 F.3d 1258
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
KARSTENS PRODUCTS, INC., Plaintiff-Appellee,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant-Appellant.
 No. 95-1392.
 United States Court of Appeals, Federal Circuit.
 Dec. 19, 1995.
 
 Before ARCHER, Chief Judge, BENNETT, Senior Circuit Judge, and MAYER, Circuit Judge.
 ORDER
 ARCHER, Chief Judge.
 
 
 1
 The court considers, sua sponte, whether the district court's transfer order should be summarily vacated and the case retransferred.
 
 BACKGROUND
 
 2
 This case involves the review of the disallowance of Karstens' claim with the Federal Deposit Insurance Corporation (FDIC) against Capitol Bank & Trust Company under the Financial Institutions Reform, Recovery and Enforcement Act, Pub.L. 101-73, 103 Stat. 183 (1989) (codified as amended throughout various sections of Titles 12 and 15) (FIRREA). Karstens entered into negotiations with Pinecrest Products, Inc. for the purchase of Pinecrest. Both entities are in the wholesale produce business. As part of the proposed transaction, Karstens and Pinecrest executed an escrow agreement whereby Pinecrest's principal, Howard Goodman, personally guaranteed several of Pinecrest's debts. The guarantee was secured by two certificates of deposit that were issued by Capitol and owned by Goodman's mother in trust for Goodman.
 
 
 3
 Around the time of Pinecrest's sale, Pinecrest was experiencing financial difficulties and was unable to pay its expenses. As a result, after the sale was completed, Karstens transferred some of its own funds into Pinecrest's corporate bank account in order to cover those expenses. Karstens also paid some of Pinecrest's bills from Karstens' own corporate bank account. The escrow agent then informed Goodman that Pinecrest was indebted to Karstens for approximate $65,000, and the escrow agent requested payment pursuant to the escrow agreement. Karstens apparently was not reimbursed.
 
 
 4
 In December 1990, the FDIC placed Capitol into receivership. Later that month, the FDIC mistakenly issued two checks to Goodman's mother in an amount representing the balances of the accounts evidenced by the certificates. The certificates, however, had not been surrendered.
 
 
 5
 In May 1992, Karstens filed a claim with the FDIC for the proceeds of the certificates pursuant to 12 U.S.C. Sec. 1821(d)(3). The FDIC disallowed Karstens' claim. In August 1992, Karstens filed an action in the United States District Court for the District of Massachusetts pursuant to 12 U.S.C. Sec. 1821(d)(6), seeking judicial review of the disallowance. Karstens and the FDIC conducted settlement negotiations, and they arrived at a tentative oral agreement. In June 1993, the parties informed the district court at a scheduling conference that they had tentatively agreed to the terms of a settlement. According to the district court, "[t]he parties stated their belief that if the proposed settlement was rejected by the FDIC, the case could be submitted for decision on an agreed statement of facts." The district court ordered the case "administratively closed pending receipt of settlement documents or a settlement of agreed facts." The FDIC thereafter approved the proposed settlement agreement and it transmitted a copy of the proposed agreement to Karstens. Karstens then inquired of the FDIC when payments would be forthcoming. In the meantime, the FDIC account officer in charge of Karstens' claim discovered the payment to Goodman's mother. Since that time, the FDIC has refused to pay Karstens.
 
 
 6
 Karstens moved to reactivate the district court case. The district court granted the motion for the limited purpose of accepting motions for summary judgment based on the settlement agreement. The parties submitted a statement of agreed facts and cross-moved for summary judgment. Finding that the parties had "consummated" the settlement agreement, the district court determined that the case had been transformed from an action for judicial review of the FDIC's disallowance of a Sec. 1821(d)(3) claim into a contract action against the United States for the enforcement of the settlement agreement. Based on those circumstances, the district court concluded that it had lost jurisdiction and, determining that there was no independent basis for jurisdiction under either the Tucker Act or 12 U.S.C. Sec. 1819(a)(Fourth), it ordered sua sponte that the case be transferred to the Court of Federal Claims. This appeal followed.
 
 
 7
 The FDIC in its brief argues that the district court improperly transferred the case. Karstens apparently agrees and it has informed the court that it will not file a brief.
 
 DISCUSSION
 
 8
 At the outset, the district court found that it had jurisdiction under Sec. 1821(d)(6) to review the disallowance of Karstens' claim. The district court determined that it subsequently lost jurisdiction because the "nature of this case has been transformed ... into an action sounding in contract to enforce the terms of a settlement agreement." The district court noted:
 
 
 9
 It is true that this case was never dismissed, but rather administratively closed pending receipt of settlement documents. The Court does not find this fact sufficient to distinguish the posture of this case from the more common situation where the parties have settled, the case has been dismissed, and one party comes back to federal court seeking enforcement of the settlement agreement.
 
 
 10
 The district court reasoned that jurisdiction was lost because it had no "inherent power" to enforce the terms of the settlement agreement. It thus transferred the case sua sponte. In support, the district court relied on Kokkonen v. Guardian Life Ins. Co. of Am., 114 S.Ct. 1673 (1994).
 
 
 11
 In Kokkonen, the Supreme Court held that a district court which had dismissed a case with prejudice pursuant to a settlement agreement lacked subject matter jurisdiction to enforce the terms of the settlement agreement. It concluded that the district court did not have authority under the doctrine of ancillary jurisdiction to enforce the settlement agreement and that any contract action to enforce the agreement would lie in a state court. The Court reasoned that an enforcement action is separate and distinct from the original action and, because it is more than just a continuation or renewal of a dismissed action, it requires its own jurisdictional basis. The Court noted that the parties did not provide in the settlement agreement that the district court reserved jurisdiction to enforce the terms of the agreement. Under Rule 41(a)(2), the parties could have provided that the district court reserved the power to enforce the terms of the settlement agreement, or under Rule 41(a)(1)(ii) the district court, upon the parties' request, could have embodied the settlement agreement in its dismissal order, thereby preserving its jurisdiction. The Court concluded that "[a]bsent such action, however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." Kokkonen, 114 S.Ct. at 1677.
 
 
 12
 Turning to the facts of this case, it is not clear that the parties executed a settlement agreement. Apparently no agreement was ever submitted to the district court and, although the district court found that settlement documents were "exchanged," the district court made no finding that a settlement agreement had been signed by the parties. Instead, the parties submitted a statement of agreed facts, which they had agreed to do "if the proposed settlement was rejected by the FDIC." (Emphasis added.) Thus, if there was no settlement agreement, the case could not have been transformed into an enforcement action.
 
 
 13
 The district court's jurisdictional analysis ignores the long-standing principle that " 'the jurisdiction of the Court depends upon the state of things at the time of the action brought.' " Keene Corp. v. United States, 113 S.Ct. 2035, 2040 (1993) (quoting Mollan v. Torrance, 9 Wheat. 537, 539, 6 L.Ed. 154 (1824)). The district court determined that the presence of the FDIC as a party initially provided the requisite jurisdictional basis for an action in district court. To be sure, 12 U.S.C. Sec. 1819(b)(2)(A) provides that all civil suits, sounding in common law or of a equitable nature, to which the FDIC is a party arise "under the laws of the United States." Karstens never sought voluntary dismissal of its action. Instead, the district court administratively closed the case. It is clear that at the time the district court administratively closed the case it contemplated that further proceedings might take place, e.g., ruling on summary judgment motions; otherwise, the district court would have dismissed the action. Thus, the proceedings following reactivation were a continuation of the underlying action, not a new action.
 
 
 14
 Further, in this case there is an "independent basis for federal jurisdiction" in district court. Kokkonen, 114 S.Ct. at 1677. The district court "assume[d]" that Karstens action was "in essence a suit against the United States because, as the parties concede that the underlying deposits were erroneously paid to [the owner of the certificates], any judgment against the FDIC would necessarily have to be paid from federal funds." The district court determined that under 28 U.S.C. Secs. 1346(a)(2) and 1491(a)(1), the Court of Federal Claims had jurisdiction over the action as one against the United States in excess of $10,000. FIRREA, however, provides an independent basis for district court jurisdiction in this case: The FDIC has the power "[t]o sue and be sued, and complain and defend, in any court of law or equity, State or Federal." 12 U.S.C. Sec. 1819(a) (Fourth). This court addressed FIRREA's "sue and be sued" clause in Far West Fed. Bank, S.B. v. Director, Office of Thrift Supervision, 930 F.2d 883 (Fed.Cir.1991).
 
 
 15
 In Far West, we concluded that FIRREA's "sue and be sued" clause constitutes a waiver of immunity over a district court suit involving money damages on a contractual claim. Far West, 930 F.2d at 889. We reasoned that "[t]he large number of statutes that contain 'sue and be sued' clauses reflects congressional intention that judicial remedy not be withheld when governmental agencies enter into transactions with the public. Judicial decisions illustrate the courts' concern for this legislative purpose." Id. at 888. We also concluded that recovery in a suit against the FDIC is limited to funds under the control of the agency, and that the "Treasury backup" of the Federal Savings and Loan Insurance Corporation Resolution Fund "does not bar the grant of monetary relief by the district court pursuant to the 'sue and be sued' clause, or impose exclusive Tucker Act jurisdiction." Id. at 890.
 
 
 16
 Applying Far West to this case, we conclude that the district court erred in concluding that the Court of Federal Claims has exclusive jurisdiction. The cases cited by the district court for the proposition that the Court of Federal Claims has exclusive jurisdiction over contract actions against the United States are all distinguishable because none of those cases addressed "sue and be sued" clauses. Further, in Far West we held that recovery in an action against the FDIC is limited to funds in the FDIC's possession and control and that such an action is not one against the United States. Thus, the district court also erred in assuming that Karstens' action was one against the United States. Lastly, it bears emphasizing that the district court transferred the case sua sponte and both parties agree that the district court erred in doing so.
 
 
 17
 Accordingly,
 
 IT IS ORDERED THAT:
 
 18
 (1) The order transferring this case to the Court of Federal Claims is summarily vacated.
 
 
 19
 (2) The case shall be retransferred to the United States District Court for the District of Massachusetts.